UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------- x

ELIZABETH ORTIZ-ORTIZ,              :

            :

         Plaintiff,      :

            :      **MEMORANDUM &**

   -against-          :      **ORDER**

            :

CONNECTICUT DEPARTMENT OF     :      3:25-CV-491 (VDO)
MENTAL HEALTH AND ADDICTION SERVICES,:
FRANCIS GIANNINI, and ALICIA FELLER,   :

            :

        Defendants.    :

------------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

After being terminated from her employment for allegedly submitting falsified records on behalf of a relative, Plaintiff Elizabeth Ortiz-Ortiz commenced this action against Francis Giannini and Alicia Feller (the "Individual Defendants"), in their individual capacities, and her former employer, State of Connecticut, Department of Mental Health and Addiction Services ("DMHAS") (collectively, "Defendants"). Plaintiff alleges the following claims: Racial discrimination in violation of Title VII of the Civil Rights Act of 1964; Racial discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA"); Failure to accommodate in violation of the Rehabilitation Act; Failure to accommodate in violation of CFEPA; Violation of the Fourteenth Amendment via 42 U.S.C. § 1983 as to the Individual Defendants; and Violation of 42 U.S.C. § 1981 as to the Individual Defendants. This matter is before the Court on Defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). For the reasons set forth below, Defendants' motion is **granted in part and denied in part**.

I.    **BACKGROUND**[1]

A.    **Factual Background**

Defendants include a state agency and two state employees. DMHAS, a state agency with an office in Bridgeport, Connecticut, hired Plaintiff in March 1998.[2] The Individual Defendants are alleged to be involved with disciplining employees: Feller is a former Chief Executive Officer and Giannini is the current Chief Executive Officer of DMHAS Greater Bridgeport Mental Health.[3]

Plaintiff, a Hispanic female, was employed as MHA II/Case Manager by DMHAS.[4] From September 2019 to September 2021, Plaintiff was on leave from work in connection with a vehicle accident where she suffered head trauma, memory loss, and vision loss.[5] Her attempts to return to work were delayed despite her doctor clearing her to return.[6] When she returned to work, DMHAS scrutinized the validity of Plaintiff's accessible parking pass and contacted the Department of Motor Vehicles to see if her pass was valid.[7] On October 6, 2023, Plaintiff was terminated for allegedly submitting falsified records on behalf of a relative who received services from Defendant.[8]

---

[1] The Court accepts as true the factual allegations in the First Amended Complaint and draws all reasonable inferences in Plaintiff's favor for the purpose of deciding Defendants' motion.

[2] FAC, ECF No. 23 ¶¶ 3, 7.

[3] *Id.* ¶¶ 3, 42, 45.

[4] *Id.* ¶¶ 6, 7.

[5] *Id.* ¶¶ 8, 9.

[6] *Id.* ¶ 10.

[7] *Id.* ¶ 13.

[8] *Id.* ¶ 14.

On October 24, 2023, the Connecticut Department of Labor issued a decision denying Plaintiff unemployment compensation benefits due to DMHAS's claim of willful misconduct by her.[9] On April 24, 2024, the State of Connecticut Employment Security Appeals Division reversed the initial denial of unemployment benefits by finding that Plaintiff had neither falsified records nor committed willful misconduct.[10]

### B.    Procedural History

On August 27, 2024, Plaintiff filed a complaint with the State of Connecticut Commission on Human Rights and Opportunities ("CHRO") and cross-filed with the Equal Employment Opportunity Commission ("EEOC"), alleging retaliation and discrimination based on race and physical disability.[11] Plaintiff was granted a release of jurisdiction by CHRO on December 26, 2024, and by the EEOC on March 26, 2025.[12]

On March 26, 2025, Plaintiff filed this action and then, in August 2025, filed an amended complaint.[13] Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[14] The motion was fully briefed on March 16, 2026.[15]

---

[9] *Id.* ¶ 25.

[10] *Id.* ¶ 32.

[11] ECF No. 48-3 at 1.

[12] ECF No. 23 ¶ 5.

[13] ECF Nos. 1, 23.

[14] ECF No. 48.

[15] ECF Nos. 53, 56.

## II.      LEGAL STANDARD

### A.      Motion to Dismiss For Lack of Jurisdiction

A party may move to dismiss a complaint for "lack of subject-matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When the Rule 12(b)(1) motion is facial, "*i.e.*, one 'based solely on the allegations of the complaint or the complaint and exhibits attached to it,' plaintiffs have no evidentiary burden, for both parties can be said to rely solely on the facts as alleged in the plaintiffs' pleading." *Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter*, 822 F.3d at 56). The pleading must "show[] by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). In ruling on a jurisdictional challenge to the complaint, "a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Id*.

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Carter*, 822 F.3d at 57. "It is only where 'jurisdictional facts are placed in dispute' that the court has the 'obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision[.]" *Carter*, 822 F.3d at 57.

4

**B.**      **Motion to Dismiss For Failure to State a Claim**

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). "To survive dismissal, the pleadings must contain 'enough facts to state a claim to relief that is plausible on its face[.]'" *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**III.    DISCUSSION**

As discussed below, the motion to dismiss the CFEPA claims against DMHAS for lack of subject matter jurisdiction under Rule 12(b)(1) is granted and the motion to dismiss for failure to state a claim under Rule 12(b)(6) is granted in part and denied in part.

**A.     The 12(b)(1) Motion**

The Court finds that Plaintiff's CFEPA claims against DMHAS are barred by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, the "Eleventh Amendment bars suits for monetary damages against state governments and state officials when they are sued in their official capacities in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh

5

Amendment immunity." *Doe v. United States*, No. 24-CV-1146 (VDO), 2025 WL 2740575, at \*7 (D. Conn. Sept. 26, 2025) (cleaned up). "As a state agency, DMHAS enjoys the protection against suit in federal court afforded by the Eleventh Amendment." *Brock v. Dep't of Mental Health & Addiction Servs.*, No. 20-CV-1889-MPS, 2025 WL 2432603, at \*8 (D. Conn. Aug. 22, 2025). While the State of Connecticut has expressly waived its immunity for CFEPA claims brought in the Superior Court of Hartford, it has not waived Eleventh Amendment immunity for CFEPA claims brought in federal court. *Pinder v. Conn. Dep't of Mental Health & Addiction Servs.*, No. 20-CV-1918 (JAM), 2022 WL 475162, at \*4 (D. Conn. Feb. 16, 2022) (collecting cases). Additionally, during oral argument on the motion, Plaintiff conceded that DMHAS possesses Eleventh Amendment immunity against CFEPA claims brought in federal court. Accordingly, Defendants' motion to dismiss the CFEPA claims against DMHAS as alleged in Counts Two and Four is granted for lack of subject matter jurisdiction.

### B.      The 12(b)(6) Motion

#### 1.      Preliminary Issues

As an initial matter, Plaintiff's claims against Giannini and Feller under Title VII, the Rehabilitation Act, and CFEPA must be dismissed because individuals cannot be liable under those statutes. *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (Title VII); *Garcia v. S.U.N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (Rehabilitation Act); *Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 105, 121–22 (D. Conn. 2006) (CFEPA). These claims—as alleged in Counts One, Two, Three, and Four—against the Individual Defendants are therefore dismissed.

### 2.    Title VII as to DMHAS (Count One)

The Court finds that Plaintiff's Title VII claim is time-barred. A plaintiff in Connecticut must file a discrimination charge with the CHRO or EEOC within 300 days of the date that a claim accrues under Title VII. *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023). Here, because Plaintiff filed the administrative complaint on August 27, 2024, any conduct occurring before November 1, 2023, is not actionable under the general 300-day rule. Plaintiff asserts that, while the Title VII claim arises out of her termination in October 2023, the continuing violation doctrine precludes dismissal of that claim because Defendants engaged in a continuing course of discriminatory conduct by making retaliatory statements after November 1, 2023. But this theory of liability is squarely foreclosed by *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), where the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. at 113. Under *Morgan*, therefore, "[w]here the plaintiff complains of discrete discriminatory or retaliatory acts such as termination, failure to promote, denial of transfer, or refusal to hire, such claims are not actionable if they occurred prior to the 300-day period even though they may be related to acts that occurred within the permissible 300-day period." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (cleaned up). Accordingly, because Plaintiff filed her administrative complaint more than 300 days after being terminated, Plaintiff's claim under Title VII is untimely and must be dismissed.

### 3.    Failure to Accommodate under the Rehabilitation Act as to DMHAS (Count Three)

The Court finds that Plaintiff's failure to accommodate claim must dismissed.

7

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 148 (2d Cir. 2024). In order to plausibly plead a Rehabilitation Act claim premised on the failure to accommodate a disability, a plaintiff must "demonstrate that (1) the plaintiff is a person with a disability under the meaning of the statute in question; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (cleaned up).

The Second Circuit's decision to affirm the dismissal of a failure to accommodate claim at the pleadings stage in *Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77 (2d Cir. 2020), is illustrative. The *Costabile* Court held that a plaintiff failed to plausibly plead the second and fourth elements—that an employer had notice of a plaintiff's disability and that the employer had refused to make a reasonable accommodation—where there were no allegations that a plaintiff ever requested an accommodation from the employer, even though it was undisputed that the plaintiff was on extended disability leave from work-related injuries. *Id.* at 82. Continuing, the *Costabile* Court found that, even if it is alleged that a doctor notified an employer that the plaintiff's condition required leave, a court "cannot reasonably infer from that general allegation" that the employer was "adequately informed . . . about the nature of Plaintiff's condition such that [they] should have known he was disabled." *Id.*

8

Here, DMHAS was on notice that Plaintiff was on extended leave from work due to an accident. Plaintiff also alleges that, after she was cleared by her doctor to return to work, DMHAS's Human Resources questioned the validity of her accessible parking pass. But the Complaint here does not specify how Plaintiff notified her employer about her disability or the accommodation that Plaintiff requested from her employer. Instead, the Complaint simply contains conclusory allegations that recite the elements of a failure to accommodate claim, which are insufficient to withstand a motion to dismiss. *Id.* at 81; *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, much like *Costabile*, it appears that Plaintiff took leave and then returned to work without any accommodation. Plaintiff thus fails to plausibly allege that DMHAS knew or should reasonably have known she was disabled and that DMHAS has refused to provide Plaintiff with a reasonable accommodation at her job. Accordingly, Plaintiff's failure to accommodate claim under the Rehabilitation Act must be dismissed.

### 4. The §§ 1981 and 1983 Claims Against the Individual Defendants (Counts Five and Six)

The Court finds that Plaintiff's race discrimination claim under 42 U.S.C. § 1983 survives dismissal.

Section 1983 imposes liability on a "person" who, under color of law, deprives another "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "'To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Buon*, 65

F.4th at 78 (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)). Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Morris-Hayes v. Bd. of Educ.*, 423 F.3d 153, 159 (2d Cir. 2005).

As relevant here, Plaintiff purports to state a Section 1983 claim under two theories of liability: **(1)** The Fourteenth Amendment to the United States Constitution, and **(2)** 42 U.S.C. § 1981. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. As made actionable by Section 1983, the Fourteenth Amendment "provides public employees with the right to be free from discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (cleaned up). Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 "thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004). "Section 1983 'constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'" *Williams v. New York City Hous. Auth.*, 61 F.4th 55, 70 (2d Cir. 2023) (quoting *Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018)).

To begin with, the Court rejects Defendants' argument that Plaintiff has not sufficiently pled personal involvement of any individual defendant. "If a defendant has not *personally*

violated a plaintiff's . . . rights, the plaintiff cannot succeed on a § 1983 action against the defendant." *Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014); *see also McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977) ("In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). But Plaintiff alleges that the Individual Defendants were directly involved in the discipline of Plaintiff and the alleged comparators,[16] and that they were "maintaining a system of discipline that allowed African-American employees of DMHAS Greater Bridgeport Mental Health facility to repeatedly violate agency rules . . . with either no discipline or comparatively little discipline when compared to nonAfrican-American [sic] employees."[17] Considering that the thrust of the Section 1983 claim is that the Individual Defendants unlawfully disciplined Plaintiff, including by terminating her employment, unlike her comparators, these allegations sufficiently show their personal involvement.

Next, the Court resolves whether Plaintiff plausibly alleges an intent to discriminate on the basis of race. While a "plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right," *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020), at the motion to dismiss stage, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Flanagan v. Girl Scouts of Suffolk Cnty., Inc.*, No. 23-7900-CV, 2025 WL 1501751, at *3 (2d Cir. May 27, 2025) (quoting *Vega*, 801 F.3d at 84) (Section 1981 claim); *see also Buon*, 65 F.4th at 79 (explaining, that for an Equal Protection claim, a plaintiff must

---

[16] ECF No. 23 ¶¶ 42, 44.

[17] *Id.* ¶¶ 41, 43.

11

plausibly allege facts to show "at least minimal support for the proposition that the employer was motivated by discriminatory intent" (quoting *Littlejohn*, 795 F.3d at 311)). Circumstances giving rise to an inference of discrimination can include "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge. *Littlejohn*, 795 F.3d at 312 (cleaned up). Where a plaintiff seeks to show discrimination through allegations of disparate treatment of a purported similarly situated employee, she must show that she "was similarly situated in all material respects to the individuals with whom" she compares herself. *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (cleaned up); *accord Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016). "In the context of employee discipline, [ ] the plaintiff and the similarly situated employee[s] must have engaged in comparable conduct, that is, conduct of comparable seriousness." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 20 (2d Cir. 2015) (quoting *Raspardo*, 770 F.3d at 126).

Here, Plaintiff has pleaded facts to provide plausible support for a minimal inference of discriminatory motivation. In support of Plaintiff's race discrimination claims stemming from the termination of her employment, Plaintiff alleges that "DMHAS has treated employees who are in a different racial category than Plaintiff (i.e. non-Hispanic) more favorably than her for conduct that was the same, similar to, or worse than the conduct alleged by Plaintiff."[18] Plaintiff then satisfies the "minimal" pleading standard by identifying six purportedly similarly-situated comparators and describing the events leading up to their alleged

---

[18] *Id.* ¶ 34.

punishments.[19] *See Bogle v. Dep't of Mental Health & Addiction Servs.*, No. 23-CV-00323 (VAB), 2024 WL 1241923, at *5 (D. Conn. Mar. 22, 2024) (denying dismissal of Section 1983 discrimination claim where there were allegations of a comparator who was subject DMHAS's work rules and who engaged in similar or greater seriousness to a plaintiff's conduct); *see also Maynard v. Stonington Cmty. Ctr.,* No. 15-CV-483 (RNC), 2017 WL 1246330, at *2 (D. Conn. Mar. 31, 2017) (denying dismissal of Title VII discrimination claim where comparators were alleged to work for the same employer in similar positions and reported to the same supervisor). Though the merits of the allegations that similarly situated employees of a different race were treated more favorably than Plaintiff have not been proven, the facts plausibly show that Plaintiff was targeted in such a way that raises an inference of racial animus.

Accordingly, Plaintiff's Section 1983 claim withstands dismissal.

## IV.    CONCLUSION

For the reasons described above, Defendants' motion to dismiss (ECF No. 48) is **GRANTED** as to the Title VII (Count One), CFEPA (Counts Two and Four), the Rehabilitation Act claims (Count Three) and **DENIED** as to Section 1983 claims (Counts Five and Six). The Section 1983 claims against the Individual Defendants remain pending. Accordingly, Defendants shall file an answer to the Complaint **within fourteen days of this order**.

---

[19] *Id.* ¶¶ 34, 35.

**SO ORDERED.**

Hartford, Connecticut
June 18, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge

14